UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————

LG CAPITAL FUNDING, LLC,
                    Plaintiff,            19-cv-3447 (JGK)

          – against –                     MEMORANDUM OPINION
                                          AND ORDER
IMERJN, INC.,
                    Defendant.
——————————————————————

JOHN G. KOELTL, District Judge:

The Clerk entered a certificate of default against the
defendant, Imerjn, Inc. ("Imerjn"), on July 17, 2019. ECF No. 11.
When the defendant failed to show cause why a default judgment
should not be entered against it, the Court found that the
plaintiff, LG Capital Funding, LLC ("LG") was entitled to a
default judgment. (ECF No. 21). The Court ordered an Inquest on
Damages. The plaintiff thereafter submitted Proposed Findings of
Fact and Conclusions of Law that depended, in part, on prior
submissions in this case. The plaintiff sought a total of
$539,569.58 in damages, $135.18 per day of interest, attorney's
fees of $13,575, and costs of $515. ECF No 23. The Court now makes
the following findings of fact and reaches the following
conclusions of law.

                              I.

In 2013 and 2014, the defendant issued several convertible
notes to the plaintiff ("Note 1," "Note 2," "Note 3" and "Note 4,"
and together, the "Notes"), pursuant to which the plaintiff loaned
the defendant a total of $278,500. Compl., ECF No. 1, ¶¶ 7-29. The

plaintiff alleges that the defendant defaulted on the terms of the Notes in two ways: as to Note 3, by failing to deliver shares which the plaintiff had validly sought to convert; and as to all the Notes, by failing to repay the amounts due thereunder. Id. ¶¶ 70, 74. On April 18, 2019, the plaintiff brought this suit against the defendant. On July 17, 2019, the Clerk of Court entered a default against the defendant after the defendant failed to respond to the complaint. ECF No. 11. The plaintiff then moved for a default judgment against the defendant, ECF No. 12, and the defendant failed to respond. Thereafter, the Court found that the plaintiff was entitled to a default judgment. ECF No. 21.

## II.

The Court has subject matter jurisdiction over this case and personal jurisdiction over the parties.

## 1.

There is diversity of citizenship over this action. See 28 U.S.C. § 1332(a)(1). A limited liability company such as LG takes the citizenship of each of its members for the purpose of diversity jurisdiction. Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012). All members of LG are citizens of New York, Compl. ¶ 1, and therefore LG is a citizen of New York. For the purpose of diversity jurisdiction, a corporation is a citizen of every state in which it is incorporated and of the state in which it has its "principal place of business." 28 U.S.C. § 1332(c)(1). Imerjn is incorporated

2

and has its principal place of business in Nevada, Compl. ¶ 2, and Imerjn is therefore a citizen of Nevada. There is complete diversity between the parties and the amount in controversy exceeds $75,000. The Court therefore has subject matter jurisdiction.

2.

With respect to personal jurisdiction, each Note provided that the parties "consented to exclusive jurisdiction and venue in the courts of the State of New York." Compl. Exs. C, G, K, N, ¶ 14. "Though the Second Circuit has not decided the issue," Beach v. Citigroup Alt. Invs. LLC, No. 12-cv-7717, 2014 WL 904650, at *8 (S.D.N.Y. Mar. 7, 2014), courts in this circuit have read similar language to indicate that the parties have agreed to the jurisdiction of the New York State courts, not federal courts in New York State. See id.

This jurisdictional language does not limit the Court's personal jurisdiction over the defendant. Parties may consent to personal jurisdiction of a particular Court through contractual forum selection clauses, but they may not, by submitting to one court's power, thereby divest another court of power over it. New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 28 (2d Cir. 1997); LG Cap. Funding, LLC v. M Line Holdings, Inc., 422 F. Supp. 3d 739, 753 (E.D.N.Y. 2018) (applying this principle in the context of personal jurisdiction); N. Fork Partners Inv. Holdings, LLC v. Bracken, No. 20-cv-2444, 2020 WL 6899486, at *11 (S.D.N.Y.

3

Nov. 23, 2020) (same, noting that "a defendant has no power to immunize himself from personal jurisdiction by inserting a mandatory forum selection clause in a contract"). Accordingly, the "exclusive" language of the Notes does not prevent this Court from exercising personal jurisdiction, if personal jurisdiction otherwise exists.

A district court sitting in diversity must apply the forum state's law in determining whether the Court has personal jurisdiction over a defendant. CutCo Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). New York CLPR § 302(a)(1) provides for personal jurisdiction over a non-domiciliary defendant who "transacts any business within the state," if the suit arises out of that transaction of business. In this case, the defendant issued the Notes to the plaintiff, a New York company. Compl. ¶¶ 1, 7-29. The plaintiff is a limited liability company organized under the laws of the State of New York with its principal place of business in Brooklyn, New York. Compl. ¶ 1. The Notes were part of a business transaction between the plaintiff New York lender and the defendant in which the defendant issued Notes to the plaintiff and the defendant borrowed money from the plaintiff. The Notes were governed by New York law. These facts are sufficient to constitute the transaction of business in New York. M Line Holdings, Inc., 422 F. Supp. 3d at 753-54; see Parke-Bernet Galleries, Inc. v. Franklyn, 256 N.E.2d 506, 506-09 (1970). Moreover, the exercise of this jurisdiction is constitutional. Due

process requires that the defendant have in some way purposefully availed itself of the protection of the forum state. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024-25 (2021). The defendant did so here not only by borrowing money from a New York lender, but also by agreeing to sue and be sued within the state should an issue arise — which consent, even if it does not constitute a per se submission to the jurisdiction of this Court, informs the purposeful availment analysis. See M Line Holdings, Inc., 422 F. Supp. 3d at 752-54. The Court therefore has personal jurisdiction over the defendant.

### III.

In the event of a defendant's default, the plaintiff's properly pleaded allegations in the complaint, except those related to damages, are accepted as true. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011). With respect to damages, the plaintiff bears the burden of establishing its entitlement to the relief sought. See Trs. of Local 813 Ins. Tr. Fund v. Rogan Bros. Sanitation Inc., No. 12-cv-6249, 2018 WL 1587058, at *5 (S.D.N.Y. Mar. 28, 2018). In the case of a default where the defendant has never appeared, "a court may base its determination of damages solely on the plaintiff's submissions." Id. (citing Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). While the Court must "take the necessary steps to establish damages with reasonable certainty," Transatlantic Marine Claims Agcy., Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d

Cir. 1997) the Court need not hold a hearing "as long as it ensure[s] that there [is] a basis for the damages specified in a default judgment." Fustok, 873 F.2d at 40. In this case, a hearing is unnecessary because the plaintiff's submissions have not been contested and they provide all the information necessary to determine the plaintiff's damages. Moreover, no party in this case has requested a hearing on damages.

The Court applies New York choice-of-law rules to the claims over which it has diversity jurisdiction. See Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989). Under New York law, courts generally enforce choice-of-law clauses. Ministers & Missionaries Ben. Bd. v. Snow, 26 N.Y.3d 466, 470 (2015). The Notes provide that they are to be governed by New York law. Compl. Exs. C, G, K, N ¶ 14. Because there is no reason not to honor this choice in this case, New York law applies to the dispute.

To state a breach of contract claim under New York law, a plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004). The plaintiff alleges two breaches: (1) failure to deliver shares pursuant to a Notice of Conversion, and (2) failure to repay the balance of the Notes.

The plaintiff contends that the defendant breached provisions of four convertible redeemable promissory notes issued by the

defendant to the plaintiff. The plaintiff alleges that in connection with each of the Notes, it made disbursements to the defendant, and that the defendant failed to pay amounts owed under the Notes. The plaintiff also alleges that the defendant breached its obligations under Note 3 to provide certain stock of the defendant. In Count I, the plaintiff seeks damages based on the defendant's failure to deliver the defendant's stock pursuant to the plaintiff's Notice of Conversion pursuant to the terms of Note 3. In Count II, the plaintiff seeks damages based on the defendant's failure to pay amounts owed under the Notes.

**A. Failure to Deliver Shares Pursuant to Notice of Conversion**

The plaintiff alleged the existence of Note 3. Compl. ¶ 16. The plaintiff further alleged that, under the terms of Note 3, it was obligated to pay the defendant and New Venture Attorneys, P.C. a total of $94,500, which it did. Id. The plaintiff alleged that, pursuant to the terms of Note 3, the plaintiff was entitled to submit a Notice of Conversion with respect to "all or any amount of the principal" or any accrued interest, Compl. Ex. K, ECF No. 1-11, ¶¶ 3-4, and to exercise its right to purchase shares of stock at 50% of the lowest share price for the preceding twenty days. Id. The defendant would then be obligated to tender the shares within three business days. Id. The plaintiff has alleged that it properly submitted a Notice of Conversion on July 29, 2014, "electing to convert $13,500 of the principal amount and $387.62 of accrued interest of Note 3"; that the relevant

conversion price was $0.00025 per share, and that it was therefore entitled to 55,550,465 shares. Compl. ¶ 31. Despite this, the plaintiff alleged that the defendant failed to tender the shares within the requisite three days. Finally, the plaintiff has alleged damages resulting from the defendant's failure to tender the shares. Id. ¶¶ 71-72. Taking these allegations as true, as the Court must in light of the defendant's default, the defendant is liable for breach of contract for failing to deliver shares pursuant to the Notice of Conversion.

Damages for breach of contract should seek to "place the nonbreaching party in as good a position as it would have been had the contract been performed." Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y., 886 N.E.2d 127, 132 (N.Y. 2008). Damages are measured as of the date of the breach. Simon v. Electrospace Corp., 269 N.E.2d 21, 26 (N.Y. 1971). Thus, damages for failure to honor an election to convert under a convertible note are the mean market price (namely, the average of the highest and lowest selling prices) of the stock on the day of the breach multiplied by the number of shares the lender attempted and was entitled to convert. LG Cap. Funding, LLC v. Cardiogenics Holdings, Inc., 787 F. App'x 2, 4 (2d. Cir. 2019).

The plaintiff alleged that it submitted a Notice of Conversion on July 29, 2014. Compl. ¶ 31. The time for the defendant to tender the shares was three business days, which was August 1, 2014. Id. ¶ 32. Because the defendant failed to do so,

that is the date of breach. On that date, the stock traded between $0.0010 and $0.0015. Compl. Ex. S, ECF No. 1-19.[1] The mean between these two prices is $0.00125. The plaintiff alleged that it attempted and was entitled to convert outstanding principal and interest into 55,550,465 shares. Id. 55,550,465 shares multiplied by $0.00125 per share is $69,438.08.

The plaintiff is therefore entitled to $69,438.08 in damages on its claim that the defendant breached the contract by failing to deliver shares pursuant to the Notice of Conversion in connection with Note 3.

### B. Failure to Repay the Balance of the Notes

Likewise, the plaintiff alleged the existence of the Notes; that it paid certain sums to the defendant under the Notes, id. ¶¶ 8-21; and that the defendant failed to remit to the plaintiff the outstanding balance of the Notes when they became due, as it was obligated to do, id. ¶¶ 43-46. It has also alleged damages resulting from the failure to repay. Id. ¶ 76. Taking these allegations as true, as the Court must in light of the defendant's default, the defendant is liable for breach of contract for failing to repay the balance of the Notes.

The damages required to put a lender in the same position as it would have been in had the contract been honored are the

---

[1] The plaintiff alleged that subsequent to these events, a reverse stock split took effect, such that 10,000 shares were exchanged for 1 share. Compl. ¶ 55. The share price reflected in Exhibit S accounts for that reverse split. This Memorandum Opinion and Order refers to the pre-reverse stock split prices.

principal plus the interest that has accrued. "[W]hen the principal on a loan is due on a date certain and the debtor fails to make payment, the interest rate in the contract will be used to calculate interest on unpaid principal from the date of maturity of the loan to the entry of judgment." NML Cap. v. Republic of Argentina, 952 N.E.2d 482, 488 (N.Y. 2011) (internal citations omitted). New York law permits interest rates of up to 16% per annum. General Obligations Law § 5-501[1]; Banking Law § 14-a[1]. However, this limit offers no defense if a higher rate is triggered only after default of the borrower or maturity. Kraus v. Mendelsohn, 948 N.Y.S.2d 119, 120 (App. Div. 2012).

The Notes provided for three distinct interest rates: a regular interest rate of 8% per annum on Notes 1, 3 and 4; a regular interest rate of 12% per annum on Note 2; and on each of the Notes, an interest rate of 24% per annum that would be triggered by an Event of Default. Compl. Exs. C, G, K, N at 1, 5. Because the only rate that exceeds the usury threshold is triggered only by a default, each of these rates is enforceable.

The sum demanded in the complaint reads the Notes' provision of default interest as providing for non-compounding interest on the entire sum owing as of the date of default (including the non-default interest accrued). See Compl. Fig. 2. The Notes define "Event of Default" to include a "default[] on or breach[ of] any term of any other note of similar debt instrument into which the [defendant] has entered and failed to cure such default within the

appropriate grace period." Compl. Exs. C, G, K, N ¶ 8(h). As such, the defendant's failure to honor the Notice of Conversion under Note 3 on August 1, 2014, constituted an Event of Default under each of the Notes, triggering the default interest rate as of that date with respect to the total principal and interest outstanding on each of the Notes. As of that date, the total sum outstanding was $205,585.37. Compl. Fig. 2. Accordingly, the default interest to which the plaintiff is entitled is $135.17 per day after August 1, 2014.[2] Lehman Decl. ¶ 8.

The balance of the principal and accrued interest as of August 1, 2014 ($205,585.37) combined with the default interest of $135.17 per day for every day thereafter exceeds the $438,229.15 demanded in the complaint. Compl. at 16. Rule 54(c) provides that a default judgment must not exceed what is sought by the pleadings. However, the rule permits a court to "award[] damages that accrued during the pendency of the litigation if the complaint put [the] defendant on notice that [the] plaintiff might seek such damages." Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010).

Here, with respect to the failure to repay the balance of the Notes, the complaint specified that the plaintiff sought "damages in an amount to be determined at trial, but not less than" $438,229.15. Compl. at 76. The "not less than" language put the

---

[2] The Court accepts the plaintiff's decision to round down rather than to round up the daily interest amount. Lehman Decl. ¶ 8.

defendant on notice that a default judgment could exceed the amount specified. S.E.C. v. Boock, No. 09-cv-8261, 2015 WL 4460882, at *9 (S.D.N.Y. July 21, 2015). Accordingly, the defendant was on notice that further interest might accrue, and the Court may award damages in excess of $438,229.15 on the failure-to-repay claim.

## C. Attorney's Fees and Costs

"[W]hen a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." Diamond D Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992) (quoting F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987)). The absence of a specific dollar amount in the complaint with respect to attorney's fees does not preclude their award on a default judgment. See Cartright v. Lodge, No. 15-cv-9939, 2017 WL 1194241, at *5 (S.D.N.Y. Mar. 30, 2017).

Each Note provides that the defendant will "pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by the [plaintiff] in collecting any amount due under th[e] Note." Compl. Exs. C, G, K, N, ¶ 7. This unambiguously and permissibly provides for attorney's fees in light of the plaintiff's success. Griffen Sec., LLC v. Citadel Car Alarms, LLC, No. 19-cv-3494, 2020 WL 3264173, at *2 (S.D.N.Y. June 17, 2020),

report and recommendation adopted, No. 19-cv-3494, 2020 WL 3791869 (S.D.N.Y. July 6, 2020). The blend.ed attorney's rate sought is $250 per hour, Kehrli Decl., ECF No. 23, at 3, which is very reasonable in this District for the mid-level and junior associates who litigated this case. See LCS Grp. LLC v. Shire LLC, 383 F. Supp. 3d 274, 279 (S.D.N.Y. 2019). The number of hours expended, 54.3, and costs of $515 are also reasonable. Accordingly, the plaintiff is entitled to attorney's fees in the amount of $13,575 and costs in the amount of $515.

### IV. Conclusion

To the extent not specifically addressed in this Memorandum Opinion and Order, the plaintiff's claims are either moot or without merit. The plaintiff's request for damages against the defendant is **granted**. The Clerk is directed to enter judgment in favor of the plaintiff and against the defendant in the following amounts: $69,438.08 on Count I; $205,585.37 on Count II, plus interest of $135.17 per day from August 1, 2014 until the date judgment is entered; and $14,090 in attorney's fees and costs.

SO ORDERED.

Dated:   New York, New York
         October 21, 2021

                                    John G. Koeltl
                              United States District Judge